UNITED STATES of America,
Plaintiff–Appellee,

v.

Anna Irene MARTINEZ,
Defendant–Appellant.

No. 87–1953.

United States Court of Appeals,
Tenth Circuit.

June 20, 1989.

Sander N. Karp of Karp & Dodge, Denver, Colo., for defendant-appellant.

William D. Welch and Kathryn Meyer, Asst. U.S. Attys. (Michael J. Norton, Acting U.S. Atty., D. Colo., with them on the brief), Mountain States Drug Task Force, Denver, Colo., for plaintiff-appellee.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN, District Judge.*

McWILLIAMS, Circuit Judge.

In a thirty-three count superseding indictment, Anna Irene Martinez and nineteen others were charged with various drug-related offenses. Specifically, all defendants were charged in Count 1 with conspiring among themselves, and with others, from June, 1984, to June 11, 1986, to distribute heroin and to possess heroin with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1). In Count 5 Anna Irene Martinez was charged with a series of distributions of heroin from March, 1985 through June, 1985, in violation of 21 U.S.C. § 841(a)(1). In Count 15 Anna Irene Martinez and "Pic" Nunez were charged with the use of a telephone on May 29, 1985, to facilitate the possession and distribution of heroin, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

A jury convicted Anna Irene Martinez on Counts 1 and 15, but acquitted her on Count 5. She was sentenced to ten years imprisonment on the conspiracy conviction, and four years on Count 15, with the latter sentence to be served concurrently with the former sentence. She now appeals her convictions and the sentences imposed thereon. On appeal, the government concedes that because of faulty jury instructions the conviction under Count 15 must be reversed, and the sentence imposed under that count vacated. Accordingly, the present appeal only concerns Anna Irene Martinez' conviction on the conspiracy count, and matters urged on appeal which relate to Martinez' conviction on Count 15 need not be addressed.

Martinez' first argument is that the district court erred in denying her repeated motions, made both before and during the trial, that she be tried separately from Blackie and Corky Nunez. She asserts that she should not have been tried with the Nunez brothers who were prison convicts during the alleged conspiracy since she had no contacts whatsoever with any drug ring at the state penitentiary. Indeed, permeating Martinez' argument that she should have been granted a severance is a belief that there was insufficient evidence to show that she conspired with *any* of her nineteen co-defendants to possess or distribute heroin and counsel suggests that the jury could only have convicted her on a "guilt by association" basis.[1] Counsel argues that because of this lack of incriminating evidence against Martinez, the district court erred in denying Martinez' renewed motion for a severance of her trial from that of the Nunez brothers. We do not share counsel's view of the government's evidence and find no error in the district court's denial of Martinez' several requests that she be tried separately, 658 F.Supp. 828 (1987).

The trial court's decision whether to sever is made within its sound discretion, and will not be reversed absent a strong showing of prejudice. *United States v. Esch,* 832 F.2d 531, 537 (10th Cir.1987); *United States v. Pinto,* 838 F.2d 426, 434 (10th Cir.1988). In this case, the government's evidence established Martinez' participation in the conspiracy. Anthony Nunez, the teenage son of "Pic" Nunez, testified that Martinez was frequently at the "Pic" Nunez residence and at "Pic's" nearby used car lot, and that he had seen his father give Martinez several balloons of heroin in exchange for money. Also, Stephen Torrey, who was introduced to "Pic" Nunez by Martinez' husband, testified that he had purchased heroin from Martinez, and that on one occasion he saw Martinez purchase $6,000 worth of pure heroin from "Pic" Nunez.[2] Counsel argues that the testimony of both Anthony Nunez and Ste-

---

* Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

1. The fact that three of the six defendants who went to trial were acquitted, even though tried with Blackie and Corky Nunez, would seem to deny the argument that there was any "guilt by association." *United States v. Evans,* 542 F.2d 805, 815 (10th Cir.1976).

2. The fact that Martinez was acquitted on Count 5 does not preclude a conviction on Count 1.

phen Torrey was "demolished" on cross-examination, which established that Anthony Nunez was a teenager with a history of emotional problems and that Stephen Torrey was a drug addict. Such impeaching facts, however, only posed a credibility issue to be resolved by the fact finder and were properly left for the jury to consider.

■ Furthermore, it was not essential to the government's case that it establish that Martinez conspired with every one of her nineteen co-defendants. It is enough if the government established that she conspired with one of her co-defendants, possessing knowledge of the existence of the larger organization. Certainly the evidence showed, *prima facie*, that she conspired with "Pic" Nunez. So the fact that she herself was never at the state penitentiary dealing face-to-face with "Blackie" or Corky Nunez is not a defense. As a general proposition, if a person conspires with another knowing that the latter is conspiring with another person or persons to commit the same offense, he is guilty of conspiring with such other person or persons, whether or not he even knows their identity. *See* Model Penal Code § 5.03 comment (Official Draft and Revised Comments 1985).

As this court has indicated in *United States v. Watson*, 594 F.2d 1330, 1340 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979),

> Where large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know.

*See also Blumenthal v. United States*, 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947). In this case, there was sufficient evidence, both from testimony and recorded telephone conversations, for the jury to conclude that Martinez knew that she was involved in a larger organization.

■ Counsel also asserts that Martinez should have been granted a severance because of "Blackie" Nunez' conduct at trial, which ultimately resulted in his ousting from the courtroom, and, additionally, because the jury was fully aware that the Nunez brothers, Martinez' co-defendants, were inmates at the state penitentiary. Neither of these grounds compelled a severance. Once a joint trial is commenced, the granting of a mistrial to one of the defendants and ordering that he, or she, be retried separately would only be justified by highly irregular and prejudicial circumstances. *United States v. Esch*, 832 F.2d 531, 537 (10th Cir.1987). The court instructed the jury that the absence of a defendant should not be considered. The "diversity of the verdicts returned by the jury" indicates that the jury complied with this instruction. *United States v. Evans*, 542 F.2d 805, 815 (10th Cir.1976).

Counsel's final ground for granting Martinez a severance is that Count 1 alleged one conspiracy and the government's evidence showed two conspiracies. That is not our view of the evidence. See our opinion in the companion case, *United States v. Corky Nunez*, 877 F.2d 1470 (1989).

The other matters urged on appeal for reversing Martinez' conviction on the conspiracy charge have been considered, but none would justify a reversal.[3]

Judgment affirmed as relates to Count 1, the conspiracy charge. Judgment reversed as relates to Count 15, and, on remand, the sentence imposed on that conviction shall be vacated.

McKAY, Circuit Judge, dissenting in part:

I must dissent from that portion of the court's opinion that depends on its conclusion that there was sufficient evidence to prove a single conspiracy. In addition to the reasons set out in my dissents in *United States v. Heath*, 580 F.2d 1011 (1978);

---

3. These other matters include sufficiency of the affidavit requesting a wiretap on "Pic" Nunez' home, alleged argument during closing argument, errors and vagueness in the indictment and bill of particulars, and certain evidentiary matters unique to conspiracy trials. In each instance, a close reading of the record reveals that there was no prejudicial error.

*United States v. Watson*, 594 F.2d 1330 (1979); and *United States v. Dickey*, 736 F.2d 571 (1984), I must add my observation that when it comes to the evidence showing the rim that connects the spokes (*Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); and *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974)), in my view we are not faithfully applying the mandate of *Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), to view the evidence "through the prism of the substantive evidentiary burden."